### ESTATE OF M. O'BRIEN, DECEASED.
[No. 19,824; decided May 8, 1899.]

**Will—Contest on Ground of Forgery.**—The probate of a will is permitted to stand in this case as against a charge that the instrument is a forgery, the charge being based on the theory, which finds some support in the evidence, that the testator was not at the place where the will was executed at the time of its execution.

T. E. Pawlicki and P. J. Muller, for contestant.

F. J. Kierce (Kierce, Sullivan & Gillogley), for proponent and respondent.

The will herein was admitted to probate May 27, 1898, a contest instituted prior to probate having been denied

on the same day. That pre-probate contest was by one Mary McGowan, a sister of deceased, and the grounds stated being unsoundness of mind, nonexecution and undue influence.

This post-probate contest was filed October 3, 1898, by one Margaret Durkin, another sister of decedent testator, and is confined to a charge of forgery alleged to have been perpetrated by one James C. O'Brien, a brother of decedent, on the third day of March, 1898, several months after the date of the instrument, which was October 7, 1897, the day of this date being Thursday. The date of the death of decedent was March 3, 1898. It is contended by counsel for contestants that the will was never executed, and that according to the proof it is impossible that it could have been executed on Thursday, October 7, 1897, for the evidence shows that on that day the decedent, M. O'Brien, was at a party given in honor of one Tom Parker at the O'Neill's place, on Point Lobos avenue, and he did not leave there until "the last car home," near to 12 o'clock midnight; the ledger of decedent used in his business and in his handwriting is adduced to corroborate the oral testimony on this point, page 47 of this little red book or ledger containing a pencil entry seeming to signify that on "Oct. 7," 1897, he delivered a quantity of cigars to the witness O'Neill at Point Lobos and Fifth avenues. It is contended further that the evidence establishes that the instrument was concocted and written after M. O'Brien's death, and that it was fabricated and forged on the 3d of March, 1898, as the result of a conspiracy by the parties who originally procured its probate. In support of this contention counsel for contestants allude to what they term the strange circumstances surrounding the alleged execution of this instrument and the improbability of the truth of the testimony of the witnesses for the proponent, also the dissimilarity of the signature "M. O'Brien" appended to the will and the admitted signatures to other papers, and counsel claim that this discrepant element is discernible, for although, of course, a forger does not fortuitously simulate a script, and, therefore, as the result of study some simi-

larity must appear, still there will remain always some indicia of iniquity.

Particular stress is laid by counsel for contestants upon the item of evidence furnished by the entry in "the little red book" or ledger, page 47, and, in answer to the intimation that the entry shows signs of having been tampered with, counsel insist that it is the height of absurdity to insinuate that contestants changed the item so as to show that decedent was at the O'Neills' house on October 7, 1897, the date of the will. The important nature of this item is dwelt upon by counsel because of its corroborative character coming from an unimpugnable source, the indubitable hand of decedent. It is a fact that the subscribing witnesses testified that the will was executed near to 8 o'clock in the evening of October 7, 1897, and it is a fact that O'Neill and his wife testified that he was at their place on that evening, and M. O'Brien, the decedent, came to their place to deliver certain cigars—two hundred and fifty—and the O'Neills induced him to remain to the party given in their house to Tom Parker, and that O'Brien did not leave until time to take the last car to the Potrero, near to midnight, and it is claimed that the entry on page 47 of the ledger written by the decedent himself confirms this testimony of the O'Neills. In addition to this argument, counsel raises the point upon the contents of the document: Motive of decedent to prefer Katie O'Brien to others, and it is argued that there was no reason in fact for any such preference; that there was more reason to prefer the others, and the reason assigned in the alleged will has no adequate foundation.

The will is as follows:

"South San Francisco, October 7, 1897.

"To all whom it may concern if any thing happens to me, I want to give everything I own to my sister, Katie O'Brien for she was always so kind and good to me.

"M. O'BRIEN,

"1863 15th Ave.

"MAGGIE DULLEA O'BRIEN.
"PATRICK O'BRIEN."

The reason for contesting the will is asserted to be not a matter of pecuniary interest, but one of principle, for the statutory share of each is too small to justify a factious contest, but the contestant believes the alleged will to be false and forged, and is, therefore, concerned in conscience to thwart the consummation of a conspiracy to palm off upon the court the fruit of fraud.

The only perplexity in this case arises upon the testimony as to the whereabouts of the decedent, M. O'Brien, at the time of the alleged execution of the instrument in probate, Thursday, October 7, 1897. Notwithstanding his nationality, he could not have been in two places at once; from Point Lobos to the Potrero is a far cry at night, and if M. O'Brien was from sundown to midnight enjoying the hospitality of the O'Neills, he could not have been simultaneously in the seclusion of his own home, and consequently there was either a mistake in the date of the probated paper or it is the expression of mendacious machinators. This is the whole case of plaintiff, and upon her rests the burden of proof. She is bound to make out her case by a preponderance of proof. The swearing is stout and strong on both sides and yet the pecuniary temptation to perjury, only a few hundred dollars in value, is scarcely sufficient to justify or extenuate a fracture of the eighth commandment: Ex. xx, 16; Deut. v, 20. But it is frequently found that other motives than those merely monetary operate to pervert the moral sense, and that malice, hatred and envy, three distinct passions of the mind, cooperate to corrupt the heart and induce false swearing. It is charitable, however, to seek for worthier motives in the liability to error of perception or recollection and to attribute to mistake rather than to malice, or other evil design, the differences in the statements of witnesses. It is possible that every witness in this case is truthful in intent, and the court should be slow to pronounce any one false in purpose. There may have been a mistake in the date of the instrument in probate, and yet the main facts might remain established; the date may be correct and the entry in the ledger accurate, and still decedent may have delivered the two hundred and fifty cigars to the O'Neills on

that day in time to return home early enough to execute the will at 8 o'clock. In this view the O'Neills may be honestly at fault in their recollection of the fact as to the particular party at which decedent was present. This I take to be the explanation of the matter. I cannot come to the conclusion, after full deliberation, that this probated paper is a post-mortem fabrication on the part of James C. O'Brien or any other person. The testimony for contestant, although plausible in presentation by counsel, is not sufficiently strong to. overcome proponent's proof. There is nothing unnatural or unreasonable in the disposition of his property by the testator; the reason assigned is dutiful and just, and cannot support intrinsically a doubt as to its validity or genuineness. As to the imputed dissimilarities between the subscribed name "M. O'Brien" on the instrument and the acknowledged or admitted signatures of decedent, they disappear under examination and comparison. Strongly and sincerely as counsel for contestants have presented their case to the contrary, I conclude that the signature is genuine and that the probate of the will should stand.